**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
FREDERICK A. WEIN,                  :
                                    :      Civil Action No.  04-cv-2199 (PGS)
                  Plaintiffs,       :
                                    :
            V.                      :
                                    :
THOMPSON, INC.                      :      **OPINION**
                                    :
                  Defendants.       :
_____:

**SHERIDAN,  U.S.D.J.**

This is an appeal of a decision of the Magistrate regarding discovery issues by plaintiff and an application for summary judgment by defendants.

Plaintiff filed a 26-count Complaint stemming from his termination as a patent attorney for defendant, Thomson, Inc.  Plaintiff maintains, among other things, that defendants' reasons for firing him, i.e. difficult employee, insubordinate behavior, and sexually inappropriate conduct toward his subordinate, were merely pretext for age discrimination.

I.

According to plaintiff's Complaint, Plaintiff, Frederick A. Wein, Esq.[1], born May 25, 1937, 65 years of age at the time of his discharge, is a registered patent attorney.  Plaintiff began working for TMM/TSA/TCE, defendant's predecessor, as a non-management, salaried Senior Patent Attorney on October 31, 1988.  On January 1, 1999, defendant Thomson, Inc. acquired the patent and

---

[1]Admitted to the Bar of the State of Illinois in 1974, plaintiff is not an active member of the Illinois State Bar and is not admitted to the Bar of the State of New Jersey.

licensing operations at the facility where plaintiff was working. At the time of the takeover, plaintiff was 61 years old. Plaintiff was given pension and employment credit back to the date when he initially started with the predecessor company in 1988. On August 9, 2002, plaintiff was advised he was being discharged "for being a difficult" employee.

In the late 1980's, Thomson purchased the consumer electronic division of General Electric (GE). However, GE retained control over the intellectual rights to the patent and licensing department. When Thomson took over GE's patent and licensing department on January 1, 1999, plaintiff's employment with GE was terminated and he was hired as an at-will employee for Thomson Multimedia Licensing, Inc., then a subsidiary of Thomson.

Defendants recount a series of e-mail exchanges between plaintiff and his supervisor, Robert Shedd, which allege to amount to insubordinate and inappropriate behavior. In each of these strings of e-mails, the plaintiff was either directed to perform a task in a certain manner or reminded of a task to perform. On each occasion, plaintiff responded to his supervisor, accusing him of being "insulting." Plaintiff's insubordination was further demonstrated by plaintiff's involvement of an inventor, akin to a client, in his personal conflict with Shedd. Plaintiff, in an e-mail to the inventor, made disparaging comments about Shedd, and blamed Shedd for a significant delay in the filing of a patent.

Evidently, plaintiff had poor working relationships with his administrative assistants, causing several reassignments. On November 9, 2001, plaintiff met with Laurie Kaplan, the human resources manager, and Shedd regarding this recurring problem, which plaintiff claims were ludicrous. Plaintiff was allegedly advised that his work related issues would not be tolerated in the future and could result in termination.

Defendants also contend that plaintiff violated the company's harassment policies when he made inappropriate comments and sent sexually related e-mails to his administrative assistant. On July 25, 2002, plaintiff's administrative assistant complained to Kaplan regarding the plaintiff's conduct. On August 2, 2002, plaintiff met with Kaplan and Shedd regarding the complaints. Plaintiff's employment was terminated on August 9, 2002.

II.

Although plaintiff was provided with a binder of documents containing at least 233 pages, he asserts that defendants' production was inadequate. On October 11, 2005, the Magistrate Judge held a hearing to resolve all discovery disputes, and address plaintiff's motions to compel filed on November 15, 2004, April 14, 2005 and August 15, 2005. At the hearing, the Magistrate gave the plaintiff several opportunities to articulate specific documents which he sought; but plaintiff was unable to do so. As a result, the Magistrate denied the plaintiff's request for further discovery. The following colloquy occurred between plaintiff and the Magistrate. The Judge commented:

> It seems that some of - - frankly, that your requests are extremely broad here and discovery is not unlimited...I can only help you and make rulings on discovery if you tell me with precision what categories of documents, for what period of time, you are seeking...In litigation you have to precisely articulate for me what you want. This is your opportunity now to say it and I'll make a ruling on it.

In response, plaintiff renewed his request that, "any and all documents substantiating, relating or referring to the allegations contained in plaintiff's complaint be provided." The Magistrate denied the request. The Judge reiterated "I can't help you and I can't make a ruling unless you tell me specifically. To say I want them to turn over every document related to my 23 count complaint is not an appropriate - - it's not a useful way to articulate a discovery demand because its overbroad."

At another point, the Magistrate instructed the Plaintiff to specify a particular class of documents. The Judge said:

> If you want information about a particular position, you have to articulate the position, the date that you applied and - - and tell them specifically so that they can decide - - they can take a position, either give you who was chosen and give you the discovery, but you can't just say I want all the jobs I applied for. You were employed by the predecessor as long as 10 years ago, 15 years ago...I'm clearly not going to allow discovery on a claim that's time barred.

In response, Plaintiff requested "a period of time to resubmit document requests," claiming that he was "not prepared at this time." The Court, however, denied the request because the plaintiff is an attorney and was placed on notice of the hearing scheduled to resolve all discovery disputes. The Court stated:

> [T]his is your opportunity. Discovery pursuant to [the former Magistrate's] order is closed. If you cannot articulate what you want, sir, other than this one thing about the other positions that you reference, I'm not prepared to extend discovery . . .

Even at oral argument before this Court, Plaintiff insisted that he used "form" discovery requests, and therefore they are specific enough.

Although not a litigator or a member of the bar of this State, "pro se attorneys typically cannot claim the special consideration which the courts customarily grant to pro se parties." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82 n. 4 (2d Cir. 2001); *U.S. v. Yousef*, 327 F.3d 56, 131 (2d Cir. 2001)*; Harbulak v. County of Suffolk*, 654 F.2d 194, 198 (2d Cir.1981) (same). Nevertheless, granting wide latitude to plaintiff, his failure to provide a specific discovery request is inexplicable.

Plaintiff has failed to demonstrate to the Court the required showing on a Magistrate Appeal,

that the ruling was "clearly erroneous or contrary to law," and, therefore, the plaintiff's motion is denied.

III.

Plaintiff's opposition to the motion for summary judgment makes categorical denials to defendants' Rule 56.1 statement, but fails to provide any counter-statement on his behalf. Rather, plaintiff's statement is devoted solely to the plaintiff's dissatisfaction with defendants' discovery production. In light of the alleged failure to produce all relevant documents, the plaintiff maintains that "it is only equitable that ALL of the allegations and counts of the complaint be considered as facts at issue." Where a litigant fails to file the necessary Rule 56.1 statement, the Court will draw the facts from available sources including the pleadings and discovery materials. L.Civ.R. 56.1, comment 2; see also *Jordan v. Allgroup Wheaton*, 218 F.Supp.2d 643, 646 (D.N.J. 2002), aff'd 95 Fed. Appx. 462 (3d Cir. 2004); *Colida v. Sharp Electronics*, 2004 U.S. Dist. LEXIS 27428 (D.N.J. 2004), aff'd 125 Fed. Appx. 993 (Fed. Cir.), cert. den. 544 U.S. 1057, 125 S. Ct. 2974 (2005).

The plaintiff's legal brief offers no legal support for any of his claims and suggests that "Plaintiff's non-citation of cases is not waiver, acquiesce or estoppel of the various issues. Rebuttal and discredit places the issue and/or facts in dispute." [Plaintiff's Opp. Br. At 28]. However, when asked at his deposition for facts to substantiate his claims, plaintiff was unable to offer any facts which would support any of his 26 claims for relief.

1. <u>Age Discrimination</u>

Under the McDonnell Douglas line of cases, as applied to the ADEA and NJLAD, there is a three step burden shifting process in the analysis of pretext discrimination cases. See *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). First, the plaintiff must establish a prima

5

facie case of discrimination. To do this, the plaintiff must show that he (1) is a member of the protected class, i.e. at least 40 years of age, 29 U.S.C. § 631(a), (2) is qualified for the position, (3) suffered an adverse employment decision, and (4) in the case of a demotion or discharge, was replaced by a sufficiently younger person to create an inference of age discrimination. *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 973-74 (3d Cir.1998); *Duffy v. Paper Magic Group*, 265 F.3d 163, 168 (3d Cir. 2001). Second, upon such a showing by the plaintiff, the burden shifts to the employer to produce evidence of a legitimate nondiscriminatory reason for the adverse decision. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-09 (1993). Third, the plaintiff must then demonstrate that the employer's articulated reason was not the actual reason, but rather a pretext for discrimination. *Id*. at 507.

To survive a motion for summary judgment, the evidence must be "'sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case.'" *Connors*, 160 F.3d at 972 (quoting *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir.1997) (en banc)). A plaintiff does not need to produce compelling evidence or conclusive proof that the adverse employment decision resulted from age discrimination. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995). Rather he may point to a sufficient age difference between himself and his replacement such that a factfinder can reasonably conclude that the employment decision was made on the basis of age. *Maxfield v. Sinclair Intern'l*, 766 F.2d 788, 792 (3d Cir.), cert. denied, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1985). Nor is there any particular age difference that must be shown. *Id.* Here, plaintiff has failed to present to the Court anything that would suggest that the adverse employment action was motivated by age discrimination. No information is provided with regard to the plaintiff's replacement or whether plaintiff was ever, in fact, replaced. At oral

argument, plaintiff could not identify who replaced him, if anybody. To prove a prima facie case, the plaintiff must point to something beyond his age and an adverse employment decision that would give rise to an inference of age discrimination. To prevail on an ADEA termination claim, a plaintiff must show that his or her age "actually motivated" and "had a determinative influence on" the employer's decision to fire him or her. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).

It is well established that the *McDonnell Douglas* test may be averted if the plaintiff can prove "direct evidence of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Under *Price Waterhouse*, if an ADEA plaintiff alleging unlawful termination presents "direct evidence" that his age was a substantial factor in the decision to fire him, the burden of persuasion on the issue of causation shifts to the employer. See *Price Waterhouse*, 490 U.S. at 265-66, 276-77; *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 512-13 (3d Cir.1997). "Direct evidence" means evidence sufficient to allow the jury to find that "the 'decision makers placed substantial negative reliance on [the plaintiff's age] in reaching their decision'" to fire him. *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir.1998) (quoting *Price Waterhouse*, 490 U.S. at 277); see also *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 248 (3d Cir.2002) (same). Such evidence "leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it" when he made the challenged employment decision. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir.1995).

Plaintiff does not suggest the *Price Waterhouse* theory is appropriate, as plaintiff repeatedly

references "pretext" throughout his brief. Nevertheless, the plaintiff has educed no evidence beyond the mere allegation that the defendants "placed substantial negative reliance on the plaintiff's age in deciding to terminate his employment."

In this case, plaintiff has failed to demonstrate that he was replaced by someone sufficiently younger. When questioned at his deposition regarding facts to support his claim of age discrimination, the plaintiff responded, "Zero . . . No facts. I have no documents." Since plaintiff is unable to establish a prima facie case of age discrimination under either the ADEA or NJLAD, the Court need not delve into the proffered legitimate, non-discriminatory reasons for plaintiff's termination.

Summary judgment is granted as to Counts I (Age Discrimination under ADEA), II (Conspiracy to Discriminate Against Plaintiff under ADEA), XII (Age Discrimination under NJLAD), and XIII (Conspiracy to Discriminate Against Plaintiff under NJLAD).

2. Retaliation

Plaintiff's claims for retaliation and conspiracy to retaliate against plaintiff stemmed from plaintiff having complained of age discrimination. To advance a prima facie case of retaliation under ADEA and the NJLAD, a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265 (3d Cir. 2001).

Plaintiff's allegation of retaliation which is comprised in paragraph 21 of the plaintiff's Complaint contains no dates as to when such complaints were lodged by the plaintiff. The case law

is "seemingly split" as to whether temporal proximity between the protected activity and the alleged retaliatory act can be sufficient in itself to create an inference of a causal connection for the purposes of a prima facie case of retaliation. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). This Circuit, however, cautioned that "this 'split' is not an inconsistency in our analysis but is essentially fact-based." *Id*. The Court rejected a "time plus" theory, which would require additional evidence when the timing was not so close so as to be unduly suggestive. "Although timing and ongoing antagonism have often been the basis for the causal link, our case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference." *Id.* at 280-81. The Court in *Krouse v. American Sterilizer Company*, 126 F.3d 494, 503 (3d Cir.1997) found that "[w]hen temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." As in *Krause*, here the plaintiff offers no showing of temporal proximity or any other evidence that would tend to suggest retaliatory conduct on the part of defendants.

As with each of his other claims, plaintiff has stated that he has no facts to support this claim. Therefore, summary judgment is granted as to Counts III (Retaliatory Discharge under ADEA), IV (Conspiracy to Discriminate Against Plaintiff Based Upon Age in Retaliatory Discharge of Plaintiff under ADEA), XIV (Retaliatory Discharge under NJLAD), and XV (Conspiracy to Discriminate Against Plaintiff Based Upon Age in Retaliatory Discharge of Plaintiff under NJLAD).

    3. <u>Failure to Promote</u>

The Complaint alleges that "[o]ver the relevant period of time, Plaintiff applied for various positions which opened up but on information and belief was not given serious consideration

because of Plaintiff's age. Also during the relevant period of time, promotions were made, and on information and belief Plaintiff was not considered because of Plaintiff's age." (See Complaint ¶ 20).

"A plaintiff seeking to overcome summary judgment on a failure to promote claim must demonstrate that (1) he is a member of a protected class, (2) he applied and was qualified for a position for which the employer was seeking applicants, (3) he was rejected despite adequate qualifications, and (4) after his rejection, the position was awarded to someone with equivalent or lesser qualifications who was sufficiently younger to create an inference of age discrimination." *Pepe v. Rival Co*, 85 F.Supp.2d 349, 365-66 (D.N.J. 1999).

Plaintiff, however, does not provide the Court with the positions for which he applied or when he applied for the positions. At the discovery hearing before the Magistrate, plaintiff offered that he had applied for two positions "which were denied." (See Transcript before Magistrate Judge, Pg. 15, ln. 20-21). However, the plaintiff admitted at his deposition that he applied for the positions prior to 2002. Plaintiff's Complaint was filed on May 6, 2004, and given that the statute of limitations for all claims arising under the NJLAD is two years, plaintiff's claims for denial of promotions in 2001 and prior thereto are time barred. *Montells v. Haynes*, 133 N.J. 282 (1993).

Under Title VII, a charge must be filed with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice. The EEOC must serve notice of the charge on the employer within ten days of the filing of the charge. See 42 U.S.C. § 2000e-5(e)(1); see also *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359 (1977). If the complainant also initiates a complaint with a parallel state agency, as in the instant case, the period for filing the charge with the EEOC is extended to 300 days from the date of the alleged unlawful employment practice. See 42 U.S.C. § 2000e-5(e)(1). The EEOC is then required to investigate the charge, see *Occidental Life*,

432 U.S. at 359, 97 S.Ct. 2447, and the complainant must allow a minimum of 180 days for the EEOC investigation to proceed. See 42 U.S.C. § 2000e-5(f)(1); see also *Occidental Life*, 432 U.S. at 361 (holding that a private right of action does not arise until 180 days after a charge has been filed). The plaintiff maintains in his Complaint that he filed charges of age discrimination and retaliatory discharge with the EEOC on October 24, 2002. Therefore, any alleged violation must have occurred on or after December 28, 2001. Plaintiff has already admitted that the denial of the promotions did not occur in 2002. Therefore, the plaintiff will be statutorily barred from making such claims unless said denials occurred in the last four days of December 2001 (which includes two weekend days). Plaintiff has failed to allege that such violations occurred in those four days, much less offer the Court any proof. Therefore, plaintiff's claims for failure to promote under the ADEA are barred pursuant to 42 U.S.C. § 2000e-5(e)(1).

Summary judgment is granted as to Counts V (Failure to Promote and/or Transfer and/or Assign to New Projects and/or Assign to Technologically Inferior Patent Subject Matters under the ADEA), VI (Conspiracy to Discriminate and Failure Promote and/or Transfer and/or Assign to New Projects and/or Assign to Technologically Inferior Patent Subject Matters under the ADEA), XVI (Failure to Promote and/or Transfer and/or Assign to New Projects and/or Assign to Technologically Inferior Patent Subject Matters under the NJLAD), and XVII (Conspiracy to Discriminate and Failure Promote and/or Transfer and/or Assign to New Projects and/or Assign to Technologically Inferior Patent Subject Matters under the NJLAD).

4. <u>Violation of ERISA</u>

In this count, the plaintiff alleges that the plaintiff's age was a determining factor in terminating the plaintiff and thus denying the plaintiff the ability to continue to accumulate benefits

and denying benefits under the ERISA plans. "Section 510 of ERISA prohibits employer conduct taken against an employee who participates in a pension benefit plan for 'the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.'" *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir.) cert. denied, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987) (quoting, 29 U.S.C. § 1140 (1982). To present a prima facie case, the plaintiff must show is that he (1) belongs to the protected class, (2) was qualified for the position involved, and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent was present. *Turner v. Schering-Plough Corp.,* 901 F.2d 335 (3d Cir. 2001)(citing *Dister v. Continental Group Inc.*, 859 F.2d 1108, 1115 (2d Cir.1988)). *Turner*, a strikingly similar case, held:

> [Plaintiff's] discharge did not deprive him of his pension. All [plaintiff] has shown is that his termination deprived him of the opportunity to accrue additional benefits through more years of employment. This kind of deprivation occurs whenever an ERISA employer discharges an employee and is not alone probative of an intent to interfere with pension rights. Where this is the only deprivation, a prima facie case requires some additional evidence suggesting that pension interference might have been a motivating factor.

The court in *Turner* noted that no evidence was presented in connection with savings to the employer sufficient to view it as a motivating factor. However, the court recognized that the existence of a vested pension plan may be sufficient to establish a prima facie case. No such showing has been made in this case. As a result, it would appear that the plaintiff has failed to demonstrate the necessary intent required to succeed on such a claim.

Summary judgment is granted as to Counts VII (Denial, Based Upon Age, For Plaintiff to Continue to Accumulate Benefits and to Deny Benefits Under ERISA Plans) and VIII (Conspiracy

to Deny, Based Upon Age, Plaintiff to Continue to Accumulate Benefits and to Deny Benefits Under ERISA Plans).

     5. Violation of COBRA/RICO

The plaintiff claims that following his termination, continuing health insurance under COBRA was made available and accepted by plaintiff. However, it is alleged that because plaintiff was covered by Medicare, which typically reimbursed approximately 80% of health care costs, a reduction in the premium for COBRA benefits is required. The failure of defendants to reduce the premium charge, according to the plaintiff, amounted to collusion between defendants and its various health care providers in violation of COBRA and actionable under the RICO statute. However, plaintiff offers no legal support for this mandatory reduction of premiums. Plaintiff was aware that he was entitled to benefits under Medicare and, nevertheless, elected to pay for continuing health benefits under COBRA.

Plaintiff's claims for violations of COBRA and RICO are dismissed and summary judgment is granted as to Counts X (Violation of COBRA and ADEA Based Upon Age Discrimination) and XI (Violation of ERISA and ADEA Based Upon Age Discrimination).

     6. Fraud

To establish a prima facie case for fraud under New Jersey law, plaintiff must prove (1) that defendant made a material misrepresentation of a presently existing or past fact, (2) which he knew or believed to be false, (3) upon which he intended plaintiff to rely, (4) and upon which plaintiff reasonably did rely, (5) with resulting damages. *In re Resorts Intern., Inc.*, 181 F.3d 505, 509 (3d Cir. 1999); see *Jewish Ctr. v. Whale*, 86 N.J. 619 (1981). Moreover, plaintiff must prove each element by clear and convincing evidence. See *Stochastic Decisions, Inc. v. DiDomenico*, 236

N.J.Super. 388 (App. Div. 1989).

Plaintiff's allegation of common law or legal fraud is claimed in connection with several issues: (1) failure to pay severance; (2) failure to provide retirement health insurance; (3) placing plaintiff in a position to keep money in the pension account so as to receive retirement health benefits; and (4) placing plaintiff in a contradictory situation in offering severance pay and retirement health benefits in exchange for a waiver and release.

With regard to severance pay, the plaintiff alleges that defendants present benefit books to new and current employees which include information regarding severance pay as a "positive inducement...to be hired and to remain employees." However, by plaintiff's own admission in his Complaint, the text provides that severance pay is at the company's discretion. As a result, the plaintiff cannot show that defendants made a false representation.

As to the retirement health insurance, plaintiff maintains that unlike the severance pay, there is no language that suggests that the provision of such benefits are at the discretion of the company. There is language, however, in fine print, that bars retirement health benefits upon withdrawal of money from the pension fund. While plaintiff maintains that no one from the company told plaintiff that the withdrawal would result in a loss of retirement health insurance, such information was apparently provided, albeit in fine print, in the benefit books. Thus, once again, plaintiff cannot assert that defendants made a false representation.

Lastly, plaintiff claims that defendants' offer to settle at a meeting before the New Jersey State Division of Civil Rights on March 3, 2003, constituted fraud because "Defendant caused the situation in the first place" and "put[] Plaintiff in a contradictory situation so that Plaintiff would not be[] able to take prudent financial action." This, however, is not fraud. Offers to settle are

encouraged and favored in New Jersey.

Summary judgment is granted as to Counts XVIII (Fraud) and XIX (Conspiracy to Commit Fraud).

7. <u>Tortious Interference with a Business Relationship</u>

It is clear that a "plaintiff cannot maintain an action for tortious interference against his own employer." *Fregara v. Jet Aviation Business Jets*, 764 F. Supp. 940 (D.N.J. 1991). To assert a claim for tortious interference, a plaintiff must bring the claim against a "third party interloper" who has interfered with the relationship. In *Fregara*, the Court held:

> The alleged tortious activities of [the individual defendants] were undertaken in their capacity as supervisors and agents of [the employer]. Where, as here, the employer ratified and participated in the conduct complained of, there exists no question but that the employer acted through its agents. Thus, as agents of [the employer, the individual defendants] cannot be viewed as third parties or interlopers and could not have committed the tort of malicious interference with economic benefit. Plaintiff cannot maintain an action against any of the defendants for interference with his economic relationship with [the employer].

In light of the ruling in *Fregara*, summary judgment is granted as to Count XXI (Interference with a Beneficial Relationship) and XXII (Conspiracy to Interfere with a Beneficial Relationship).

8. <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Plaintiff was an at-will employee and thus had no employment contract. "In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Noye v. Hoffman-LaRoche, Inc.*, 238 N.J.Super. 430, 434 (App.Div. 1990); *Kapossy v. McGraw-Hill, Inc.*, 921 F.Supp. 234, 248 (D.N.J. 1996); *Kennedy v. Chubb Group*, 60 F.Supp.2d 384, 399 (D.N.J. 1999).

Plaintiff's opposition, without any legal support, offers that "an implied covenant of good

15

faith and fair dealing does not require a contract of any kind. Implied means implied." Such is not the law and therefore, summary judgment is granted as to Counts XXIII (Breach of Implied Covenant of Good Faith and Fair Dealing) and XXIV (Conspiracy to Breach Implied Covenant of Good Faith and Fair Dealing).

      9.     <u>Libel and Slander</u>

To state a claim, the plaintiff must prove: (1) that the defendant made a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to persons other than the plaintiff; and (5) fault. *Taj Mahal Travel, Inc. v. Delta Airlines*, 164 F.3d 186, 189 (3d Cir. 1998).

Other than offer the blanket statement in his Complaint that "Defendants did libel Plaintiff in writing, whether on paper or in electronic form, and/or did slander Plaintiff orally between them, in person or electronically," plaintiff has failed to establish that whatever was said was defamatory in nature. In opposition to the motion for summary judgment, plaintiff offers only that he "has been provided with documents but only documents which are favorable to Defendants' defense. This most certainly is NOT 'all documents and information.'"

In New Jersey, publication, as used in the law of defamation, "is a word of art and refers to the distribution of written material or the transmittal of the spoken word to a third person." *Palestri v. Monogram Models, Inc.*, 875 F.2d 66, 69 (3d Cir. 1989) (quoting *Lawrence v. Bauer Publishing and Printing Ltd.*, 154 N.J.Super. 271, 277, 381 A.2d 358, 362 (App.Div.1977) (Ard, J.A.D., dissenting)). The plaintiff suggests that the publication was made between defendants. Other courts have held that "communications between officers of a corporation or between different branches of the same corporation, in the course of corporate business, do not constitute publications to third

16

persons." *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285 (8th Cir. 1982); See also *Messina v. Kroblin Transp. Systems, Inc.*, 903 F.2d 1306 (10th Cir. 1990) ("statements made by one corporate employee during the performance of his duties within the hearing only of other corporate employees does not constitute publication."); *Nida v. Echols*, 31 F. Supp.2d 1358 (N.D.Ga. 1998) ("statements made by one corporate agent to another corporate agent, when the recipient of the information has a reason to receive the information, are deemed to have not been published."). Therefore, even if plaintiff was able to establish that defamatory statements were made by and between employees of defendant, which he has not, the plaintiff would then have to show that the recipients, in their corporate capacities had no reason to receive such information.

Without the statements, the Court cannot ascertain whether any such statement has a defamatory meaning, and therefore, plaintiff's claim for libel and slander must fail. Summary judgment is granted as to Count XXVI (Libel and Slander).

10. Destruction of Professional Status

Plaintiff alleges a cause of action for "destruction of professional status." Putting aside the novelty of this tort, it reiterates the allegations in previous counts. This claim is subsumed within plaintiff's other claims which have been discussed herein, and, therefore, summary judgment is granted as to these counts.

In summary, Plaintiff's Complaint is dismissed with prejudice and without costs.

August 18, 2006

S/ *Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.